IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LINDA S. CORNELIUS,

        **Plaintiff,**

vs.                                          Civ. No. 01-1389 WWD

JO ANNE B. BARNHART,
Commissioner of Social Security,

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

    1.  This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed July 1, 2002 **[Doc. 9]**.  Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI").  Plaintiff alleges a disability which commenced January 1, 1997 due to multiple allergies, an injury to her right shoulder, neck and arm and depression.  Tr. at 142.  Plaintiff claims that she "can't lift over five pounds in a repetitive motion," tr. at 43, and testified that she left several jobs because of her allergies, tr. at 43-44.

    2.  Plaintiff filed her applications for social security benefits on December 7, 1998.  Tr. at 129, 238.  After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") issued a decision on October 23, 2000 denying Plaintiff's application.  Tr. at 12-23.  On November 23, 2001, the Appeals Council denied Plaintiff's request for a review, thus rendering the ALJ's decision the final decision of the Commissioner.  Tr. at 5.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. § 405(g).

    3.  Plaintiff's date of birth is July 29, 1954.  Tr. at 129.  Plaintiff completed ninth grade, has a GED, tr. at 148, and has worked in the past as a sales clerk, keno writer runner and

psychiatric attendant, tr. at 44, 143.  The ALJ concluded that Plaintiff is not disabled because, despite her impairments, "there are a significant number of jobs in the State economy which she could perform."  Tr. at 22.

4.  The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v. Sullivan, 987 F.2d 1482 (10th Cir. 1993) (citations omitted).  Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  Id. (citation omitted).

5.  Plaintiff alleges the following errors:  (1)  The ALJ relied on the answer to a hypothetical question [presented to a vocational expert ("VE")] that did not reflect Plaintiff's nonexertional impairments; and (2)  The ALJ's credibility determination is not supported by substantial evidence and is contrary to law.

6.  "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity."  Thompson, 987 F.2d at 1486 (citing 42 U.S.C. §423 (d)(1)(A)); see also 42 U.S.C. § 1382c(a)(3)(A).  Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920.  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  Id. (citations omitted).

7.  At the first four levels of the evaluation, the claimant must show:  (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough

2

to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the

listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he or she is unable to

perform work done in the past.  At step five, the burden shifts to the Commissioner to show that

the claimant has a residual functional capacity ("RFC") to do work in the national economy other

than  past relevant work.  Thompson, 987 F.2d at 1487 (citations omitted).

### *Second Alleged Error - Credibility Determination*

8.  I address the ALJ's credibility determination first, because it potentially influences the

ALJ's assessment of Plaintiff's RFC and limitations and thus, the hypotheticals presented to a VE.

The ALJ found that Plaintiff's subjective complaints diminished her ability to do basic work

activities to some extent.  Tr. at 20.  However, the ALJ also found that Plaintiff's testimony "as to

the extent of her limitations was not entirely credible."  Tr. at 21.  Plaintiff asserts that the ALJ's

finding that her complaints of pain are not credible is contrary to the evidence and the law.  Pl.'s

Mem. in Support of Mot. at 4 **[Doc. 10]**.

9.  "Credibility determinations are peculiarly the province of the finder of fact, and we will

not upset such determinations when supported by substantial evidence."  Diaz v. Sec'y of Health

& Hum. Servs., 898 F.2d 774, 777 (10th Cir. 1990); cited in Winfrey v. Chater, 92 F.3d 1017,

1020 (10th Cir. 1996).  However, the ALJ's discretionary power to determine the credibility of

testimony is limited by his obligation to place on the record explicit and adequate reasons for

rejecting that testimony.  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); see also

Houston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988) (credibility findings "should be closely

and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings").

Further, the ALJ must explain why the specific evidence relevant to each factor led him to

conclude that Plaintiff's subjective complaints were not credible.   Kepler v. Chater, 68 F.3d 387,

391 (10th Cir. 1995).

      10.   In addition, when determining the credibility of pain testimony, the ALJ should

consider such factors as "the levels of medication and their effectiveness, the extensiveness of the

attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of

daily activities, motivation of relationship between the claimant and other witnesses, and the

consistency or compatibility of nonmedical testimony with objective medical evidence."

Thompson, 987 F.2d at 1489 (citing Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991)).

In reaching a finding of noncredibility, the ALJ pointed out that the objective evidence did not

support the degree of limitations alleged by Plaintiff.   Tr. at 17, 20.   The problem here is that the

ALJ's finding of noncredibility is not based on a full consideration of these factors and lacks

substantial evidence to support it.

      11.   At step two of the sequential analysis, the ALJ found that Plaintiff suffers from a

severe adjustment disorder with depressed mood, fibromyalgia, and perennial allergic rhinitis and

latex allergy.   Tr. at 21.   Fibromyalgia is described as a syndrome of pain in the fibrous tissues,

muscles, tendons, ligaments and other sites.   THE MERCK MANUAL 481 (Mark H. Beers & Robert

Berkow eds., 17th ed. 1999).   The principal symptoms are "pain all over, fatigue, disturbed sleep,

stiffness, and . . . multiple tender spots."   Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996).

There are no laboratory tests for the presence or severity of fibromyalgia.   Id.   In assessing

Plaintiff's complaints of disabling pain, the absence of objective evidence is not sufficient on

which to base a finding of noncredibility.   See Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir.

1984) (citation omitted) (noting that subjective complaints of pain may not be disregarded solely

because no objective evidence exists to support such claims).

12.  In addition to a lack of objective medical evidence, the ALJ apparently based his noncredibility finding on an evaluation of Plaintiff's purported daily activities.  However, the ALJ's findings about these activities misconstrue the evidence, lack explicit reasoning, and fail to substantially support a finding of noncredibility.  For example, the ALJ stated that Plaintiff "is able to take care of her personal needs along with having taken care of her sick mother." Tr. at 20.  However, the evidence indicates that, at most, Plaintiff cared for her sick mother for no more than three months. Tr. at 64.  Plaintiff's husband, John Cornelius, testified that during that time, he and Plaintiff's sisters also helped care for Plaintiff's mother, and that Plaintiff's assistance consisted of cooking a light meal and sometimes doing the laundry. Tr. at 64  (explaining that Mr. Cornelius "did most of [] the heavy work").  The ALJ did not elicit further testimony regarding the specific care that Plaintiff's mother required or the care that Plaintiff provided.

13.  The ALJ also noted that Plaintiff "cooks and does the laundry, and leaves the cleaning and grocery shopping to her husband." Tr. at 20.  However, the ALJ did not explain the basis for his conclusion that Plaintiff's "decision not to shop appears to be purely self imposed," tr. at 20, thus, failing to satisfy his obligation to provide "explicit and adequate reasons" for rejecting Plaintiff's testimony. See Holt, 921 F.2d at 1223.  Further, the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain, nor does the sporadic performance of household tasks or work establish that a person is capable of engaging in substantial gainful activity. Thompson, 987 F.2d at 1489.

14.  Finally, the ALJ did not consider several of the Hargis factors described above.  For example, the ALJ did not address the levels, effectiveness or adverse side effects of Plaintiff's pain

medications; nor did he explore this factor during the hearing.  Except for noting that Plaintiff

"takes a lot of Tylenol" and "takes a nap to get relief [from pain]," the ALJ did not consider the

extensiveness of Plaintiff's attempts to obtain pain relief.  The ALJ did not discuss the testimony

of Plaintiff's husband, John Cornelius.[1]   While there "is not a talismanic requirement that each

factor listed in Hargis be addressed, . . . th[e] case sets out generally the kinds of factors that

should ordinarily be considered."  Thompson, 987 F.2d at 1490.  Moreover, because there are no

objective indicators to rely on for evaluating the pain that accompanies fibromyalgia, the other

factors usually included in a credibility inquiry take on relatively greater significance.

15.  For all the reasons stated above, I find that substantial evidence does not support the

ALJ's noncredibility finding.  Thus, this matter should be remanded for a re-assessment of

Plaintiff's credibility.

### First Alleged Error - ALJ's Reliance on VE's Testimony

16.   Because this matter is remanded for a re-assessment of credibility, the Court need not

address Plaintiff's allegation of error regarding the hypotheticals presented to the VE in depth.

However, in any further proceedings, the ALJ should apply the principles set forth above to assess

the credibility of Plaintiff's allegations with respect to her nonexertional impairments, including

the allegation that she suffers from disabling allergic reactions.

17.  It is not clear whether, or to what extent, a redetermination of the credibility finding

will influence the ALJ's findings with respect to the Plaintiff's RFC and/or limitations, and thus,

---

[1]  At the hearing John Cornelius testified, *inter alia*, that Plaintiff "[i]s in constant pain"
and "eats a lot of Tylenols and whatever."  Tr. at 58.  Mr. Cornelius also testified that he
performs "[a]ny heavy lifting" and "wring[s] the mop out for her because she can't do that kind of
stuff."  Tr. at 59.

the hypotheticals presented to a VE.  However, it is not the Court's role to "reweigh the evidence

or try the issues de novo or substitute its judgment for that of the [ALJ]."  <u>Trimiar v. Sullivan</u>,

966 F.2d 1326, 1328 (10th Cir. 1992).   Accordingly, the ALJ will proceed as necessary in light

of any new findings with respect to Plaintiff's credibility.

     WHEREFORE,

     IT IS ORDERED that Plaintiff's Motion to Reverse and Remand for a Rehearing **[Doc.

19]** is granted, and that this matter be remanded for additional proceedings consistent with this

opinion, to include:

    (1)    a re-assessment of Plaintiff's credibility;

    (2)    additional proceedings, in light of any new or changed findings following the re-
assessment of Plaintiff's credibility, including a re-consideration of Plaintiff's RFC
and/or limitations and presentation of appropriate hypothetical questions to a VE,
as necessary.

                                   UNITED STATES MAGISTRATE JUDGE